UNITED STATES v. ALLEN et al.

*(District Court, E. D. Virginia.   June 15, 1889.)*

CUSTOMS DUTIES—EXPORT BONDS—BREACH.
> Act Cong. June 9, 1880, (21 St. at Large, 167,) provides that exported articles shall be entered on the outward manifest of the ship taking them abroad, but is silent as to who shall perform that duty.   *Held*, that where goods are consigned to the collector of customs at the port of shipment, to be by him shipped abroad, and he gives a personal receipt therefor, reciting that "the said merchandise was duly inspected and marked at this port, and laden on board the foreign-bound steamer W.,   *   *   *   and that said vessel and cargo were duly cleared from this port, " the exporters had a right to presume that the goods had been entered on the ship's outward manifest, and the fact that they had not been so entered was not a breach of the export bond.   The fact that in the collector's receipt, which was on a printed form, the clause expressing the entry of the goods on the outward manifest is struck out, is immaterial when such receipt is not given until after the vessel has cleared.

At Law.   Debt by the United States against Allen & Ginter.
*J. C. Gibson*, U. S. Dist. Atty., and *Jas. Lyons*, Asst. U. S. Dist. Atty., for plaintiffs.
*Legh R. Page*, for defendants.

HUGHES, J.   The United States sues Allen & Ginter, tobacco manufacturers of Richmond, Va., for the penalty of an export tobacco bond. This penalty, $53, is double the amount of $26.50 which would have been chargeable on the tobacco if it had been sold for consumption in the United States.   The tobacco which was the subject of the bond having been intended for exportation, and actually exported, no tax could be laid upon it by the government of the United States; clause 5 of section 9 of the first article of the constitution, providing that "no tax or duty shall be laid on articles exported from any state."   All the provisions of the law and regulations of the treasury department of the United States were complied with by the defendants in shipping the tobacco in regard to which they are now sued, both in transmitting it from their factories in Richmond by Coast Line steamer to New York, and shipping it thence to Antwerp, Holland, except one, which will be mentioned in the sequel.   In the bond on which the defendants are sued they stipulated in its penal clause that the collector of internal revenue at Richmond should receive, within 45 days from the 3d of September, 1887, the detailed report from the proper inspector of customs required by regulations, and a certificate from the collector of customs at the port of New York, that the tobacco intended to be exported had been received by him, and that the tobacco had been duly laden aboard

of a foreign-bond vessel, named in the certificate, and that the said tobacco had been entered on the outward manifest of said vessel, and that said vessel and cargo had been duly cleared from said port of New York. There was still another stipulation in the printed form of the bond which the defendants signed, which was immaterial and which needs no consideration.

The proofs in the case, embodied in a statement of agreed facts drawn up by counsel on either side and in correspondence filed in the cause, show that all the undertakings of defendants were fulfilled, except only that the tobacco thus exported had not been entered on the outward manifest of the foreign-bound steamer which took it from New York to Antwerp.

For this omission to enter the tobacco on such outward manifest the government claims the penalty of the bond, and brings this suit to enforce its payment. Inasmuch as the constitution of the United States forbids the exaction of a tax or duty upon any article of domestic production exported from any state, and it is admitted or proved that this tobacco was exported and was landed in Antwerp, it would seem that, if the money sued for be in any part of it a tax levied on the tobacco, there can be no recovery in this suit. The suit can only be maintained on the theory that it is brought for a penalty which the United States have a right to impose for the violation of regulations deemed necessary to the protection of the revenue, and to prevent frauds on the revenue laws. It is not pretended or proved on behalf of the plaintiffs that the omission of the defendants to see to the entering of this tobacco on the outward manifest of the departing steamer was fraudulent. It is clear, from correspondence filed in the cause, that the omission was a piece of inadvertence on the part of persons in New York, and that the defendants did not feel it incumbent upon themselves to attend personally to such a detail in the routine of the shipment from that port. If so, penalties and forfeitures being odious to the law, no loss having accrued to the government, the tobacco having actually gone abroad, there would seem to be sound equitable, as well as constitutional, objection to a recovery by the plaintiffs in this suit. But the suit is brought for the purpose, more than any other, of testing the question whether it is the duty of the exporting manufacturer or that of the customs officer at the shipping port to see that the article exported is entered on the outward manifest of the ship carrying it abroad. Originally the exporter was required to produce proof of the landing of the exported article in a foreign port within a period specified in his bond. But afterwards, for greater convenience, this requirement was withdrawn, and the exporter was made to stipulate, among other things, that the exported article should be entered on the outward manifest of the ship taking it abroad. This provision was enacted in section 1, act June 9, 1880, (21 St. at Large, 167.) That act is silent as to the person whose duty it shall be to cause the entry to be made on the outward manifest. But the method prescribed for such shipments, and the forms devised by the treasury department for regulating them, seem to me to imply

that the person having custody of the article at the port at the time of shipping, being the only person who can ship it, should see to its entry on the outward manifest; especially in cases where the article to be exported is manufactured at a place other than the port of shipment, and is forwarded to the port for the purpose under permit and regulations of the treasury department. The tobacco which is the origin of this suit having been manufactured in Richmond, was forwarded hence to the collector of customs in New York, who, after receiving it there, duly certified that it had been received by himself. It was in his custody from the time it landed in New York. It was constructively in his custody as consignee from the time it left Richmond. It was not only *custodia legis.* during this time and until it was cleared on board the foreign-bound ship at New York, but in that city it was in the actual custody of the collector of the port. In his certificate of the 17th day of September, 1887, this officer recites "that there was received by me at this port" tobacco, etc., marked, etc.; "that the said merchandise was duly inspected and marked at this port, and laden on board the foreign-bound steamer Waesland, under supervision of a proper officer; and that said vessel and cargo were duly cleared from this port for the port of Antwerp on the 6th September, 1887."

Every person familiar with the business of shipping merchandise would say that the custodian at the shipping port of the article intended to be shipped, having custody until the article is put aboard and entered as part of the cargo of the ship which is to carry it away, is the only person who can rightfully and regularly have it entered on the ship's manifest, and attend to the proper details of the shipment; and when the collector of the port of New York certified that the tobacco of defendants had been received by him, had been properly inspected and marked and laden, and duly cleared upon the Waesland, the owner of the article in Richmond had a right to presume that the article had, in order to its due clearance, been entered on the ship's outward manifest, the more especially as the act of June 9, 1880, is silent as to who should perform that duty. It is true that in the New York collector's certificate, which has been quoted from, made on a printed form supplied by the treasury department, he omitted to certify particularly that the tobacco had been entered on the outward manifest of the Waesland. In point of fact he drew his pen through the line of the form expressing that fact. It is true that the defendants became aware of that omission when the certificate came to be read by them after its arrival in Richmond in due course of mail. But the Waesland had been cleared from New York on the 6th September, and the certificate was not signed, by the collector of New York until the 17th of that month, 11 days after the clearance and after the Waesland had been out at sea. The defendants then had no power to correct an omission for which they were not responsible, and which seems to me resulted from the oversight of the plaintiffs' own officer.

This is an action at law, and but for the stipulation of counsel, by which all questions of fact as well as law were submitted to the court,

the issue of fact would have gone to a jury. I am very certain that no jury of the land would find for the plaintiffs on the facts in this case; and, even if such a verdict were possible, I am decidedly of opinion that the plaintiffs ought not to recover on the merits. I was first inclined to think that there had been a technical breach of the bond, for which merely nominal damages should be accorded, but subsequent reflection satisfies me that the defendants have substantially complied with the law, and judgment must be rendered in their favor.